**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUSAI MAHASIN,<br><br>    Petitioner,<br><br>  v.<br><br>WARDEN, USP ATWATER,<br><br>    Respondent. | Case No. 1:25-cv-00363-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND TERMINATE MOTION TO DISMISS<br><br>(ECF Nos. 1, 8)<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE AND UPDATE PETITIONER'S ADDRESS |

Petitioner Qusai Mahasin is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a prison disciplinary proceeding. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

**I.**

**BACKGROUND**

Petitioner currently is in the custody of the Federal Bureau of Prisons ("BOP") at the United States Penitentiary Big Sandy in Inez, Kentucky. (ECF No. 8 at 1 n.1; ECF No. 8-1 at 3, 8.[1]) The underlying incident and disciplinary proceeding, however, occurred while Petitioner was housed at the United States Penitentiary in Victorville, California ("USP Victorville"). (ECF No. 1 at 2.)

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

The reporting officer described the incident as follows: At 1:19 p.m. on October 31, 2022, Petitioner signed for legal mail, acknowledging ownership. The legal mail was intercepted by Receiving and Discharge staff as suspected of containing narcotics. Staff tested the contents of the mail, which tested positive for amphetamine. (ECF No. 8-1 at 27.) A review of Petitioner's TRUFONE records revealed that he made a phone call on October 26, 2022 at 7:45 p.m. to a listed outside contact. During this phone call, Petitioner asked the outside person, who was not identified as an attorney, to send the legal motion. Petitioner "indicated to the outside person that USP Victorville is copying all mail, and the outside person indicated that he quit sending regular mail due to taking too many Ls (losses)[.]" (Id.)

On November 16, 2022, the investigation was completed, and the incident report was delivered to Petitioner. (ECF No. 8-1 at 27.) Petitioner was charged with violations of Code 111 (introduction of drugs/alcohol), Code 196 (mail abuse), and Code 197 (phone abuse). (ECF No. 8-1 at 27, 54.)

On December 13, 2022, a Disciplinary Hearing Officer ("DHO") held a hearing and found Petitioner committed the prohibited act of attempted introduction of narcotics, in violation of BOP Disciplinary Code 111A. The charges of Code 196 and 197 were determined to be repetitive and expunged. (ECF No. 8-1 at 54–56.) Petitioner was assessed a sanction of forty-one days of disallowed good conduct time, sixty days of disciplinary segregation, and loss of phone and email privileges for six months. (ECF No. 1 at 11–12; ECF No. 8-1 at 57.)

On March 27, 2025, Petitioner filed the instant petition for writ of habeas corpus, challenging the disciplinary proceeding based on the failure to consider exculpatory evidence in the form of a written statement from inmate Damiri Singleton, the failure to allow Petitioner to retrieve or replace the missing Singleton statement, and insufficiency of the evidence. (ECF No. 1 at 3, 13–14, 17.) On July 17, 2025, Respondent filed a response.[2] To date, no reply to the response has been filed, and the time for doing so has passed.

---

[2] Although the responsive pleading is titled as a "motion to dismiss and response," Respondent only addresses the merits of the petition and does not provide grounds for dismissal, as opposed to denial, of the petition.

## II.

## DISCUSSION

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of the charges at least twenty-four hours before a disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Superintendent v. Hill, 472 U.S. 445, 454 (1984); Wolff, 418 U.S. at 563–67. Inmates are entitled to an impartial decisionmaker in a disciplinary proceeding. Wolff, 418 U.S. at 570–71.

In addition to the various procedural requirements for disciplinary proceedings as set forth in Wolff, due process requires that there be "some evidence" to support the disciplinary decision to revoke good time credits. Hill, 472 U.S. at 454–55. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion . . . ." Hill, 472 U.S. at 455–56.

### A. Singleton Statement

In the petition, Petitioner alleges that his staff representative, E. Perez, received a written statement from inmate Singleton, "which directly contradicted the allegations against" Petitioner. (ECF No. 1 at 11.) The staff representative "then provided the statement to the DHO office prior to the hearing." (Id.) "During the disciplinary hearing on December 13, 2022, the DHO acknowledged that the witness statement had been lost or misplaced," but then "proceeded with the hearing without allowing [Petitioner] to introduce a replacement statement or delay[ing] the proceedings to locate the missing evidence." (Id.) Petitioner asserts that the DHO's failure to

consider Singleton's written statement and failure to allow Petitioner to retrieve or replace the missing statement violated due process.

In support of these allegations, Petitioner has submitted a statement, dated July 9, 2024, from the staff representative, which states:

> This letter is confirm [*sic*] that as a unit manager and staff representative for Mahsin [*sic*] Quasai Register No. 28844-044, I was provided a witness statement from Damiri Singleton Register, No. 23957-111 and forwarded to the DHO Office as part of the Discipline Hearing held on October 31, 2022, Incident Report No. 3698910. Unfortunately, the witness statement was not made available during the hearing and could not be located. I contacted the DHO Office, and they confirmed the statement must have been misplaced or misfiled. Additionally, I do not recall what was written on the statement, only that one was provided.

(ECF No. 1 at 25.)

Respondent has submitted a declaration from the staff representative, which states in pertinent part:

> While I recall writing something for inmate Mahasin, there are some details to my purported July 9, 2024, memorandum that do not fit normal practice. It is my practice to write the Incident Report Number in the subject line, which this memorandum fails to do. This memorandum also appears to be written on a typewriter given the markings on the memorandum and spacing among the Words. It is my practice to type all my memoranda on a computer, and I have never used a typewriter in my career to author any such memoranda.
>
> As I reviewed the December 13, 2022, DHO hearing materials in this case, I was able to review the evidence that the DHO considered inculpatory to find Petitioner guilty of Incident Report Number 3698910. Based off that DHO report, I can now recall that inmate Singleton had handed me a yellow piece of paper approximately one day before the December 13, 2022, hearing. Its contents included general details about Mahasin's character and indicated that staff opened his legal mail outside of his presence. I am now able to remember these details because I reviewed the DHO report, which I would not have reviewed when I allegedly wrote the July 9, 2024, memorandum.
>
> I do not remember who I contacted from the FCC Victorville DHO office about inmate Singleton's letter prior to the December 13, 2022, hearing.
>
> Based on my service as a staff representative, it was unusual for inmate Mahasin not to remind the DHO about any alleged inmate witness statement during the DHO hearing because Mahasin was

> given the opportunity to confirm that he waived his right to inmate witnesses and to indicate that he had not requested any unavailable witnesses to submit statements.
>
> During the December 13, 2022, hearing, I made a statement that I wanted to be ensured here were no due process errors, and, upon my review, I noted that none existed[.]

(ECF No. 8-1 at 3–4 (paragraph numbering omitted).)

The DHO report indicates that Petitioner waived his right to witnesses. (ECF No. 8-1 at 55.) Additionally, Respondent has submitted a declaration from the DHO who conducted Petitioner's hearing, which states in pertinent part:

> On July 14, 2025, BOP agency counsel provided me with a copy of any [sic] alleged July 9, 2024, memorandum from FCC Victorville Executive Assistant Perez, in which he alleged that he had received a statement from an inmate, Damiri Singleton, 28844-044, which was apparently to be utilized during Mahasin's December 13, 2022, hearing. Though the statement indicated that Perez contacted the DHO office, I have no recollection that Mr. Perez contacted me or anyone in my office concerning any witness statement to be included as part of Mahasin's DHO hearing for Incident Report Number 3698910. I do not recall telling anyone in this matter about a "misplaced" or "misfiled" witness statement. I do not recall nor does my office have any record that it received any statement from an inmate witness prior to Mahasin's December 13, 2022, hearing.

(ECF No. 8-1 at 11.)

The Supreme Court has "held that one of the constitutional rights afforded a prisoner in a disciplinary hearing is that the 'inmate facing disciplinary proceedings should be allowed to ... present documentary evidence in his defense when permitting him to do so w[ould] not be unduly hazardous to institutional safety or correctional goals.'" Melnik v. Dzurenda, 14 F.4th 981, 985 (9th Cir. 2021) (quoting Wolff, 418 U.S. at 566). "[P]rocedural errors in disciplinary proceedings are subject to harmless error review." Lennear v. Wilson, 937 F.3d 257, 276 (4th Cir. 2019). See McCloud v. Lake, 787 F. App'x 483 (9th Cir. 2019) (applying harmless error review to due process claim for inability to call witness in prison disciplinary context); Graves v. Knowles, 231 F. App'x 670, 672–73 (9th Cir. 2007) (same); Brennan v. United States, 646 F. App'x 662, 666 (10th Cir. 2016) (holding that "Wolff's 24–hour notice requirement for the advance written notice is subject to harmless error review"); Piggie v. Cotton, 342 F.3d 660, 666

(7th Cir. 2003) (per curiam) (applying harmless error review to due process claim for inability to call witness in prison disciplinary context); Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991) (stating "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial").

Assuming that there was a due process violation with regard to the lost Singleton statement, the Court finds that Petitioner has not shown prejudice such that habeas relief is warranted.[3] See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (habeas relief is unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict). The petition does not state with specificity the contents of the alleged Singleton statement but rather makes vague and conclusory statements regarding its import. The petition describes the Singleton statement as "directly contradict[ing] the allegations against Mahasin," "highly relevant, as it would have directly challenged the BOP's version of events and refuted key aspects of the case against Mahasin," and "undermin[ing] the reliability of the evidence presented by the BOP and could have swayed the weight of the findings in favor of Mahasin." (ECF No. 1 at 11, 12.) There are no allegations as to the actual contents of the Singleton statement. Based on the petition's vague and conclusory statements regarding the Singleton statement, the Court finds that any error in failing to consider the statement was harmless.

**B. Sufficiency of the Evidence**

Petitioner also asserts that the DHO relied on insufficient evidence to support his disciplinary findings. In concluding that Petitioner committed the act as charged, the DHO Report stated:

> The DHO relied upon the reporting officer's statement which indicated:
>
> > On Wednesday, November 16, 2022, at approximately 10:00 a.m., an investigation was completed on inmate Mahasin, Qusai, (Reg. No. 28844-044), for an attempted introduction of narcotics into USP Victorville. On October 31, 2022, at approximately 1:19 p.m., Inmate Mahasin signed for

---

[3] As set forth above, there are conflicting allegations regarding the Singleton statement and what occurred at the disciplinary hearing with regard to said statement. The Court finds that it need not resolve the conflict because Petitioner has not shown prejudice.

legal mail acknowledging ownership. The legal mall that was Intercepted by Receiving and Discharge staff was suspected to contain narcotics. Staff then tested the content of the mall utilizing NIK testy A, U, and W in order. The first test turned orange to brown in color, the second test turned burgundy in color, and the third test turned to green in color confirming positive test for Amphetamine. Inmate Mahasin was then placed In the Special Housing Unit pending SIS investigation. A review of inmate Mahasin TRUFONE records revealed he made a phone call to 313-858-1430, on 10-26-2022, at 7:45 p.m., which is a listed outside contact of Inmate Mahasin. During this phone call inmate Mahasin asked the outside person who was not identified as an attorney to send the "Legal Motion." Inmate Mahasin also indicated to the outside person that USP Victorville is copying all mail, and the outside person indicated that he quit sending regular mail due to taking too many Ls (losses), which indicated several failed attempts to introduce narcotics into the Institution. Inmate Mahasin and the outside person were discussing sending legal mail instead of regular mall. These phone call revealed the outside person and Inmate Mahasin conspiring to introduce narcotics utilizing coded communication in reference to the legal mail, by way of Inmate Mahasin's legal mail. The intelligence gathered during the investigation coincided with the evidence collected. Inmate Mahasin attempted to introduce narcotics via inmate legal mail by means of using phone communication to an outside person.

The DHO relied upon the Supporting Memorandum provided by Correctional Systems Officer B. Pittman who Indicated, "On 10/31/2022 at approximately 1:19 PM, I was passing out Legal Mail, addressed to specific inmates, housed at USP Victorville. Inmate Mahasin, Qusai (Reg Number 28844-044) received a certified piece of legal mail from the following address: Al White jr, ESQ, Attorney at Law, 7924 N. Cherry Street, Kansas City, MO 64116 certified Mail Reference #: 70221670000150756520. These letters require staff to confirm the identity of the inmate, and the Register Number on the envelope, before having the inmate sign to accept the specific piece of mail. Inmate Mahasin stated to me that this was his mail, and that he was expecting it. At that time I had inmate Mahasin sign the log sheet confirming ownership of the item. I then proceeded to open the letter in front of inmate Mahasin and inspect the contents of the envelope. Upon further inspection, I found that the paper inside the envelope had a "Heavy" feel, and a "Waxy" appearance on the paper itself. There was also the presence of a strange odor emanating from the paper. At that time I called for the SIS department. I requested that they take the envelope for further testing based upon my initial findings. The SIS department took possession of the fetter at that time." [sic]

The DHO relied upon the Evidence Photograph of the Inmate Special, Legal, and Accountable Mail Logbook which had been completed on October 31, 2022, at 7:00 a.m. which was signed by inmate MAHASIN as receiving the envelope from "Al White, Jr, Atty" in Kansas City, MO. This receipt was signed by Correctional Systems Officer B. Pittman at 1:19 p.m. on October 31, 2022.

The DHO relied upon the Evidence Photographs which depicted the white business sized envelope addressed to Inmate MAHASIN from Al White, Jr, Esq. which was stamped "Legal Mail Open in the presence of inmate" which contained fictitious legal documents appearing to have been soaked in an unknown substance from which two small samples were cut and tested with NIK tests A, U, and W, which had changed to brown, burgundy, and green, respectively, indicating a positive result for Amphetamines.

> The DHO relied upon the Supporting Memorandum provided by Lieutenant S. Langley who indicated, "On October 31, 2022, at approximately 1 p.m., I tested an unidentified saturated sample of papers associated with inmate Mahasin, Qusai reg no.28844-044, I utilized the ldentiDrug chart and tested the substance with the NIK test kit A, U, and W. A NIK test turned orange to brown color. U NIK test kit shifted to burgundy color. NIK test W, turned to green in color confirming positive test for Amphetamine. Photographs of contraband and NIK test results were taken. I am NIK test certified."
>
> The DHO relied upon the Information contained within the SIS Threat Assessment Investigation which is protected by the Freedom of Information Act.
>
> The DHO relied upon the statement provided by Staff Representative, Mr. Perez, who indicated MAHASIN wanted to be ensured there were no due process errors and upon his review, it was noted none existed.
>
> The DHO reviewed the Investigation and UDC portions of the disciplinary process and noted inmate MAHASIN declined the opportunity to provide a statement of defense at either of these stages, leading the DHO to draw an adverse inference.
>
> The DHO considered Inmate MAHASIN's written statement provided at his discipline hearing in which he denied the charge, citing due process violations due to receiving late notice of the charge, claimed the mail was opened without him "present and not shown to him at any time during the process", claimed a "biased investigation", and that telephone calls related to the legal mail did not mention drugs only a motion for reconsideration. The DHO explained to the inmate the investigation was closed within 24 hours of the inmate receiving notice of the charges, therefore, a due process rights violation claim had no merit. The DHO also found the statement regarding the mail being opened without his presence to be without merit as the staff member who processed the mail advised in his memorandum the inmate was present when he signed for the envelope and staff inspected the contents. The inmate's claim the investigation was biased was also found to be without merit as the inmate was given the opportunity to provide evidence or a statement in his defense which could possibly exculpate him from the charge and declined. Furthermore, the telephone calls in question appear to have been coded language and due to their discussion within the SIS report, this information is protected by the Freedom of Information Act.
>
> Based upon the greater weight of the incident report as written, the supporting memorandum indicating the envelope was intercepted by staff after being signed for by the inmate, the logbook page indicating the inmate signed for the envelope, the evidence photographs of the fictitious legal mail and the NIK tests indicating a positive result for amphetamines, the supporting memorandum describing the NIK testing process which indicated the result of the test was amphetamines, and the SIS threat assessment, the DHO was convinced inmate Qusai MAHASIN, Register Number 28844-044, did Attempt to Introduce Narcotics, in violation of Code 111 A.

(ECF No. 8-1 at 56–57.)

The Court is not tasked with weighing evidence or assessing credibility of witnesses in order to determine whether the requirements of due process are satisfied. "Instead, the relevant

8

question is whether there is any evidence in the record that could support the conclusion . . . ." Hill, 472 U.S. at 455–56. Additionally, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Id. at 457. Here, the DHO relied on "the incident report as written, the supporting memorandum indicating the envelope was intercepted by staff after being signed for by the inmate, the logbook page indicating the inmate signed for the envelope, the evidence photographs of the fictitious legal mail and the NIK tests indicating a positive result for amphetamines, the supporting memorandum describing the NIK testing process which indicated the result of the test was amphetamines, and the SIS threat assessment" in finding that Petitioner committed the act as charged. (ECF No. 8-1 at 57.) Therefore, the Court finds that there is "some evidence" to support the decision to disallow good conduct time. Accordingly, Petitioner is not entitled to habeas relief.

### III.
### RECOMMENDATION & ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and Respondent's motion to dismiss be TERMINATED.

Further, the Clerk of Court is DIRECTED to:

1. Randomly ASSIGN a District Court Judge to the present matter; and
2. Update Petitioner's address to:

> USP Big Sandy
> P.O. Box 2068
> Inez, KY 41224

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed

within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **October 3, 2025**                    /s/ Erica P. Grosjean
                                                       UNITED STATES MAGISTRATE JUDGE